UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES          )    CR. NO. 04-10082-NG

VS.                    )    COURTROOM NO. 2

ERIC E. RESTEINER,     )    1 COURTHOUSE WAY

    DEFENDANT               BOSTON, MA  02210


FINDINGS OF FACT

SENTENCING DAY 2

MAY 16, 2006

2:42 p.m.


BEFORE THE HONORABLE NANCY GERTNER

UNITED STATES DISTRICT COURT JUDGE


VALERIE A. O'HARA

OFFICIAL COURT REPORTER

1    A P P E A R A N C E S:

2        United States Attorney's Office, by DIANE C. FRENIERE,
     ASSISTANT UNITED STATES ATTORNEY, One Courthouse Way,
3    Suite 9200, Boston, Massachusetts  02210, for the United
     States;
4
         Amabile & Burkly, P.C., JOHN A. AMABILE, ESQ.,
5    380 Pleasant Street, Brockton, MA  02401, for the Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Okay.  Let me first clarify some of

2     the things that I had said the last time because I think

3     Mr. Amabile is right in some regards.  First, I'm a well

4     outspoken critic of the Sentencing Guidelines because

5     oftentimes when you add up the column of figures, you get to

6     a number that is so out of proportion punishment-wise to the

7     individual in front of you, but as I said, this case struck

8     me as the same criticism but in the other direction.

9          When I added up the column of figures, it seemed

10    to be inadequate punishment given the scope of what I saw,

11    but to some degree my position is consistent, I think that

12    the guidelines don't adequately account for individual

13    characteristics, and most of the time, 9 times out of 10

14    it's because they are over the top in punishment.

15          This was a situation which struck me differently,

16    and I'm not saying that this is payback for all the times

17    that the guidelines have been excessive, I'm saying that

18    when I look at this from the perspective of the nature of

19    the crime, not the column of figures, this is a more serious

20    variety of mail fraud than I typically see, and that's

21    really ultimately what sentencing is about.  You're drawing

22    distinctions, people commit crimes, and there's a range of

23    ways that they commit them and then you look and you say is

24    this at one end or is this at the other end?  That's a

25    retribution model, but, nevertheless, that's one way of

1    looking at it.

2         I agree with the guideline computation then about

3    the amount, but when I look at that in terms of what

4    Mr. Resteiner did, here's the analysis:  I've had lots of

5    mail fraud cases both as a judge and as a lawyer, and

6    typically one measure is how many people were harmed, what

7    was the nature of the harm?  Well, this is a harm that is

8    off the top, that is extraordinary kind of harm to people.

9         This was an abuse of trust.  This was an

10   extraordinary abuse of trust, this is not just the abuse of

11   a fiduciary relationship, this was the abuse of a

12   relationship of a church relationship.  He was a

13   journal-listed practitioner, a healer.  The source of his

14   victims were the people that he came across in the church,

15   so when the guidelines talk about abuse of trust, there's

16   abuse of trust, and then there is extraordinary abuse of

17   trust, and when the guidelines talk about harm, there is

18   ordinary harm, and there is extraordinary harm.

19        I was thinking of U.S. v. Mueffelman, which is not

20   a case that Ms. Freniere had tried, but in Mueffelman the

21   defendant did what he could to get people who had low credit

22   homes, and at some point he completely misjudged the scheme

23   and he kept on taking new clients, and people ultimately

24   lost money, but there was certainly a period of time when he

25   was working day and night to try to get this business going

1    and it fell apart.

2         This is a case in which there is no pretense of

3    investment, there was no pretense of a business.  This was

4    taking money from people and not just putting it in his

5    pocket to help a sick relative or to put it in his pocket to

6    help a, you know, troubled son or a troubled daughter, this

7    was putting it in his pocket so that he could have a castle

8    in Switzerland formerly owned by the Shaw of Iran.  This is

9    a degree, you know, of harm and a scope of a crime that is,

10   as I said, in the range of mail fraud, this is way at the

11   most severe end.

12        I recognize that the money laundering issue should

13   not enter into the calculus as a question of law, and I'm

14   not allowing this to enter into the calculus.  I agree with

15   you, Mr. Amabile, on reflection that the extradition process

16   is a constitutional process in part, and so when a country

17   doesn't extradite someone because they don't have a

18   comparable crime, I can't consider it, and that to some

19   degree puts a lid then on what this sentence would be

20   because it cannot be the same as it would have been had he

21   been extradited for money laundering.

22        So the scope of this scheme is in the range of

23   mail fraud far worse than everything I've ever seen.  When I

24   looked at comparable cases, and I asked probation to pull

25   comparable cases, in fact, mail fraud is all over the map.

1    There's no correlation between amounts and sentences so that

2    was not a help to me, and when I looked and I had mentioned

3    that I had sat on the Bleidt case where the individual got

4    108 months, and that was because it was money laundering and

5    mail fraud, but that it is a substantial mail fraud scheme

6    for which the guideline range of 25 and criminal history 1

7    is inadequate because this is the far worse end.

8        Probation in their presentence report suggested an

9    aggravating role adjustment of 4 which had not been in the

10   plea agreement but which reflects a situation where

11   somebody, it doesn't matter whether they were actually

12   supervising people, it includes people who didn't organize,

13   lead, manage or supervise but who, nevertheless, exercised

14   management responsibility over the property, assets or

15   activities of a criminal organization.  I actually think

16   that fits, and that would lead to an increase of four

17   levels.

18        I can't go any higher than that.  I appreciate

19   that for a couple reasons, as I said, as a matter of law, I

20   can't go any higher because the sentence has to reflect the

21   fact that he was not extradited.  That is the sealing.  I

22   can't go any higher because the government's plea agreement,

23   ironically, which is that to some degree when a judge asks

24   to depart without either party framing it, it's like jumping

25   off a cliff without a parachute.  I have no framework.  The

1   people who know the most about this are the ones who are

2   then not participants in this, so I can't go any higher than

3   what I said 29-1 is 87 to 108, and, as I said, I can't go

4   any higher than that because, in fact, I can't identify a

5   number that correlates with these other mail fraud schemes.

6   There's really no coherent measure.

7           I agree with you, Mr. Amabile, that we have spent

8   our time too much focusing on punishment and retribution,

9   and we've lost sight of the rest, but there are offenses

10  that are trumping offenses.  There are times when you look

11  at the offense, and you say, you know, that's the most

12  significant thing.  The most significant thing is the scope

13  of the offense.  The most significant thing is the

14  punishment that is proportional to the offense.  The most

15  significant thing is to focus on the offense as compared to

16  other offenses, and that's the fair way of looking at

17  this.

18          One of the problems with the guidelines is that we

19  stopped giving narratives, we stopped telling stories about

20  why people do what they do, and that's why I asked you, why

21  did he do this?  And this offense and this victimization of

22  these people is so extraordinary for which there is no

23  reason that I think the sentence has to reflect society's

24  profound indignation for them, profound indignation, but I'm

25  going to be within the guideline range, and the guideline

1    range is 87 to 108.

2          I was about to come out here and say 96 months,

3    but I will not, I think, in deference to the fact that

4    Mr. Resteiner cooperated to a degree and I think cooperated

5    to a degree in a way that made it easier for the government

6    actually to find out not only about other people but also to

7    find out about the victims, and in that respect, it's much

8    like the Bleidt case as well.  That has to count for

9    something.  When he was caught, he helped them figure out

10   who the victims are, but I will sentence him to 87 months.

11   It is a guideline sentence with the enhancement of four

12   levels for aggravating role adjustment, and it's a sentence

13   it seems to me that reflects the purposes of punishment

14   including notably retribution.

15         The sentences in this court for mail fraud range

16   from, really range from probation to 120 months, literally

17   from probation to 120 months, so I couldn't possibly, that

18   wasn't going to help.  So the top here, just to reiterate, I

19   can't go any higher, although I would have considered it

20   because I can't have a sentence that reflects in any way the

21   money laundering offenses which are out of this case, I

22   can't go any higher here because I am bound to some degree

23   by the fact that there isn't a party in the case asking for

24   more, and that constrains how far I can go, and I can't go

25   any higher because I can't really come up with a rational

1    measure of what higher would look like other than my

2    indignation of the case which I understand shouldn't count

3    any longer in sentencing, if it ever should.

4              So, Mr. Resteiner, would you please stand.  I'm

5    going to sentence you to 87 months which is to be on each

6    count of conviction to be served concurrently.  I recommend

7    that the Bureau of Prison grant you credit for all the

8    periods of your official detention including the period in

9    Singapore it was from the date of your arrest on

10   February 10th, 2004.

11             Upon your release from imprisonment, I'm going to

12   place you on supervised release for two years on each count

13   to run concurrently.  When you're released, there will be an

14   immigration detainer on you.  The odds are that you won't be

15   released to the street, but if you are, you report

16   immediately to probation in the district to which you've

17   been released.  You're to make restitution to the victims

18   listed in the chart that will be attached to the judgment in

19   the amount of $33,949,762.  Interest will be waived.

20             Payment shall be made to the Clerk of the U.S.

21   District Court for transfer to the various victims in the

22   amounts specified by the chart.  I endorse the U.S.

23   Attorney's efforts to get the proceeds from the SEC action

24   applied to this case, and to the extent that there's

25   anything that this Court can do to effectuate that, I will

1   do.

2          Any payment made that is not payment in full shall

3   be divided proportionately among the victims named.  The

4   restitution shall be paid immediately.  Any balance

5   remaining upon the defendant's release from incarceration

6   shall be paid according to a repayment schedule.  Should you

7   change your mailing or residence address, this really

8   assumes you'll get out, but, as I said, you're likely

9   deported, if your mailing address changes, you have to let

10  the U.S. Attorney's Office know while any portion of

11  restitution remains unpaid.

12         I will not impose a fine because you're not able

13  to pay a fine, and a fine would take away from the money due

14  the victims in this case.  If you wind up on supervised

15  release, while on supervised release, you are not to commit

16  another federal, state or local crime.  I will not require

17  DNA collection at all.  The issue is pending in court, and I

18  agree with Judge Keeton that we shouldn't be collecting

19  DNA.

20         You're to comply with the standard conditions,

21  and, in addition, you're prohibited from possessing a

22  firearm or other dangerous weapon.  If ordered deported,

23  you're to leave the U.S. and not return without the prior

24  permission of the Secretary of the Department of Homeland

25  Security.  As I said, you're to pay the balance of the

1    restitution.  You're prohibited from incurring new credit

2    charges without the approval of probation while any

3    financial obligation remains outstanding, and you're to give

4    probation access to financial information which may be

5    shared with the financial litigation unit of the U.S.

6    Attorney's Office.  There's a special assessment of $700

7    which shall be due immediately.

8            So it is a higher sentence than the parties have

9    jointly recommended, but it is a sentence that I think

10   adequately, well, under the circumstances adequately

11   reflects the purposes of punishment.  As I said, I couldn't

12   envision mail fraud that wreaked more havock on people's

13   lives without any imaginable reason than this, and it seems

14   to me that you needed to be sentenced in a way that

15   reflected that.

16                              - - - -